1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK EVAN GRANGETTO, by and through his Guardian Ad Litem, Nora Weber, | ) 1:07cv0438 LJO DLB<br>)<br>) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION<br>) REGARDING DEFENDANTS'<br>) MOTION TO DISMISS<br>) |
| v. | ) (Document 34)<br>) |
| DERRAL G. ADAMS, et al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

On May 4, 2009,  Defendants Darrel G. Adams and David J. Kyle ("Defendants") filed the instant Motion to Dismiss.  The matter was heard on June 5, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Cindy Cannon appeared telephonically on behalf of Plaintiff.  James Flynn appeared telephonically on behalf of Defendants.

## BACKGROUND

Plaintiff Mark Grangetto, by and through his Guardian Ad Litem Nora Weber ("Plaintiff"), filed the instant civil rights action in the Kings County Superior Court on March 1, 2007.  The action was removed to this Court on March 20, 2007.  Plaintiff alleged Eighth Amendment claims based on the conditions of his confinement and denial of medical care against Defendants Cal Terhune, Derral G. Adams and David J. Kyle, M.D. ("Defendants")

1    On October 2, 2008, Defendants filed a motion to dismiss the complaint.  On December

2    31, 2008, the Court granted the motion with leave to amend, finding that (1) the allegations

3    against Defendants Terhune and Adams did not rise to the level necessary to overcome the bar on

4    supervisory liability; and (2) Plaintiff could not state allegations and/or damages relating to the

5    loss of good-time credits and denial of parole.

6    Plaintiff filed his First Amended Complaint ("FAC") on February 2, 2009.  He named Dr.

7    Kyle and Warden Adams as Defendants and again alleged his Eighth Amendment claims.

8    Defendants filed a motion to dismiss the FAC on February 27, 2009.  On April 3, 2009, the Court

9    denied the motion to dismiss the FAC as moot because Plaintiff proposed filing an amended

10   complaint that deleted claims for injunctive relief and instead focused on Plaintiff's damages

11   claims for the period prior to the filing of this action.  Defendants did not object to the proposal

12   and the Court ordered Plaintiff to file an amended complaint.

13   Plaintiff filed his Second Amended Complaint ("SAC") on April 27, 2009.  He again

14   names Dr. Kyle and Warden Adams as Defendants, realleges his Eighth Amendment claims, and

15   seeks general, economic and punitive damages.

16   Defendants filed the instant motion to dismiss the SAC on May 4, 2009.  Plaintiff filed an

17   opposition on May 22, 2009, and Defendants filed their reply on May 29, 2009.

18                              **FACTUAL ALLEGATIONS**

19   In the SAC it is alleged, Plaintiff is a medically disabled and mentally incompetent adult

20   male currently incarcerated in Corcoran State Prison ("CSP").  He alleges that Defendant Adams,

21   the Warden at CSP, was responsible for promoting and implementing custody policies at CSP

22   and the California Substance Abuse Treatment Center ("CSATF") through which the conditions

23   of confinement and the delivery of medical care to disabled inmates such as Plaintiff violated the

24   Eighth Amendment.  Specifically, Plaintiff alleges that Defendant Adams was informed in

25   writing of Plaintiff's medical condition, starvation, mental state, need for a wheelchair, and

26   repeated delays in addressing his 602s and appeals.  Plaintiff alleges that Defendant Adams

27   characterized Plaintiff's starvation as a "hunger strike" (even though he was asking for a dietary

28   supplement because his weight had dropped below 115 pounds) and approved his placement in

2

the Administrative Segregation Unit ("Ad Seg") at CSATF and the Segregated Housing Unit ("SHU") at CSP where Plaintiff could not be monitored for his diabetes, for side effects from antipsychotic medications or for his deteriorating medical condition.  Plaintiff further alleges that Defendant Adams restricted his visitation, which limited family members' ability to communicate with the facility regarding Plaintiff's debilitated state and deteriorating medical condition.

Defendant Kyle was the Chief Medical Officer at CSATF, and was responsible for the physicians who treated Plaintiff.  Defendant Kyle also directly treated Plaintiff.  Plaintiff alleges that Defendant Kyle forcefully administered antipsychotic medications to Plaintiff, or allowed the administration of such, without any medical purpose, and therefore caused the exacerbation of Plaintiff's illnesses.  Under Defendant Kyle, the administration of antipsychotic medication was concealed from the court during probate proceedings in 2004 and in 2006.  Plaintiff further alleges that under Defendant Kyle's direction, his medical needs were blatantly disregarded such that Plaintiff was not provided a wheelchair or medical attention.  He alleges that Defendant Kyle acted with specific animus when he wrote that it would be "an honor" to be the one to "kill" Plaintiff, and referred to Plaintiff as a "contemptible waste of air."  SAC, ¶ 18.

Plaintiff alleges that he is a 43-year-old, wheelchair-bound male who suffers from diabetes, hepatitis C, chronic liver function failure, as well as brain injuries and other ailments. He alleges that he is not psychotic and has never been diagnosed with a condition to warrant the administration of antipsychotic medications.  He believes that the antipsychotic medications caused his diabetes and exacerbated other medical conditions, and that Defendants actively concealed the administration from the courts and other parties.  He alleges that the medications were forcefully administered until he became addicted and voluntarily accepted them, and that this was done without his informed consent.  Plaintiff further alleges that the administration of the medication interfered with his ability to obtain a fair parole hearing in June 2006 and resulted in the denial of good time credits.

1   Plaintiff also contends that he was denied access to the prison appeals process.  In June

2   2005, he allegedly was denied his wheelchair, medical care, sufficient nutrition and hydration

3   and means to bathe and use the restroom while in the SHU.

4   In the First Cause of Action for Violation of the Eighth Amendment, Plaintiff alleges that

5   Defendants allowed his illnesses, including his diabetes and chronic liver function failure, to

6   deteriorate intentionally by the forced administration of the antipsychotic medication, without

7   court order, and permitted the refusal of basic medical care.  This denial, as well as allowing

8   Plaintiff to be housed without a wheelchair, adequate bed or ability to bathe or use the toilet,

9   rendered his medical conditions a condition of his confinement in violation of the Eighth

10  Amendment.

11  In the Second Cause of Action for Violation of the Eighth Amendment, Plaintiff alleges

12  that as a result of the illegal administration of antipsychotic medication for 34 months, he was

13  denied necessary medical care mandated by statute for the administration of such medication.  He

14  further alleges that the administration of the drugs was not for a legitimate medical purpose, and

15  that the failure to deliver medical care violated the Eighth Amendment.

16  Plaintiff seeks economic, general and punitive damages.

17  **DISCUSSION**

18  In considering a motion to dismiss for failure to state a claim, the court must accept as

19  true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees,

20  425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing

21  the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411,

22  421, reh'g denied, 396 U.S. 869 (1969).  A motion to dismiss for failure to state a claim should

23  not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of

24  the claim that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73

25  (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake

26  Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

27

28

4

1    **ANALYSIS**

2    A.    Claims Based on Parole Denial and Loss of Good Time Credits

3        Defendants seek dismissal of Plaintiff's claims based on disciplinary actions,

4    administrative segregation or security housing unit or denial of parole.  Defendants cite the

5    Court's December 31, 2008, order, which directed Plaintiff to delete any references to denial of

6    parole or loss of good time credits because such claims are barred.  Defendants contend that

7    Plaintiff violated the order by repeating the allegations in his FAC, and again in the SAC, "even

8    though his attorney averred that the inclusion in the previous complaint had been simply an

9    oversight."  Motion to Dismiss, p. 5.

10        Here, the SAC continues to assert a denial of parole and loss of good time credits.  SAC,

11    at ¶ 13.  Although Plaintiff admits that he is not challenging his "underlying conviction or

12    sentence," he argues that Defendants were required to bring a motion to strike superfluous

13    allegations.  The Court disagrees because it previously ordered Plaintiff to delete such

14    allegations, but Plaintiff persists.  Therefore, the Court recommends that Plaintiff's allegations

15    regarding a denial of parole and loss of good time credits be STRICKEN from the SAC.  To the

16    extent Plaintiff attempts to assert claims based on these allegations, the Court recommends that

17    Defendants' motion be GRANTED as to this issue.

18    B.    Eighth Amendment Deliberate Indifference Claim

19        Defendants argue that Plaintiff has failed to state a deliberate indifference claim against

20    Defendants Adams and Kyle.

21        1.    Defendant Adams

22        Defendants argue that Plaintiff's allegations in the SAC do not overcome the ban against

23    supervisory liability.  Defendants point to allegations that Adams is responsible for promoting and

24    implementing custody policies at CSP and CSATF that caused unconstitutional conditions of

25    confinement and delivery of medical care.  SAC, ¶ 3.  Defendants contend that the Court found

26    this language did not state a claim and, hence, Plaintiff's claims based on *respondeat superior*

27    should be dismissed.

28

1    Defendants further assert that to state a claim against Adams, Plaintiff must allege facts

2  showing that Adams denied Plaintiff medical care ordered by a physician. Hamilton v. Endell,

3  981 F.2d 1062, 1066 (9th Cir. 1992) (reversing summary judgment where prison officials forced

4  prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating

5  physician's previous orders) (overruled on other grounds); Tolbert v. Eyman, 434 F.2d 625, 626

6  (9th Cir. 1970) (prisoner stated viable claim where warden refused to allow him authorized

7  medicine that he needed to prevent serious harm to his health); cf. Jett v. Penner, 439 F.3d 1091,

8  1098 (9th Cir. 2006) (prison administrators may be liable if they knowingly fail to respond to a

9  request for help).

10    As the Court stated in its previous order, supervisory personnel are generally not liable

11  under section 1983 for the actions of their employees under a theory of *respondeat superior* and,

12  therefore, when a named defendant holds a supervisorial position, the causal link between him and

13  the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d

14  858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442

15  U.S. 941 (1979).  To show a *prima facie* case of supervisory liability, Plaintiff must allege facts

16  indicating that supervisory Defendants either: personally participated in the alleged deprivation of

17  constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or

18  "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights'

19  and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646

20  (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

21  Although federal pleading standards are broad, some facts must be alleged to support claims under

22  section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

23    The SAC again fails to provide the requisite link between Defendant Adams and the

24  alleged constitutional violations.  Plaintiff does not allege that: (1) Defendant Adams personally

25  participated in any alleged deprivation; (2) Defendant Adams denied Plaintiff medical care at any

26  time, including during administrative segregation or SHU placement; or (3) Defendant Adams

27  interfered with a doctor's instructions.  Although Plaintiff alleges that Defendant Adams "was

28  specifically informed in writing of plaintiff's medical conditions, his starvation, mental state, need

6

1  for a wheelchair, and of the repeated delays and failures to address his 602's and appeals relating

2  to the same," there is no subsequent allegation that Defendant Adams failed to act in response to

3  this knowledge while the alleged deprivations were taking place.

4     Insofar as Plaintiff contends that Adams "knew of the excessive risk to [Plaintiff's] health

5  and safety and disregarded multiple efforts and attempts by others to address the same," this

6  allegation also is insufficient to state an Eighth Amendment claim.  SAC, at 8.  A prisoner's claim

7  of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1)

8  "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'"

9  and (2) "the prison official 'acted with deliberate indifference in doing so.'"  Toguchi v. Chung,

10  391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

11  2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless

12  the official "knows of and disregards an excessive risk to inmate health or safety."  Farmer v.

13  Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference may be manifested "when prison

14  officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which

15  prison physicians provide medical care."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

16  1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

17  1997) (en banc).  Plaintiff alleges that Adams disregarded "efforts and attempts" by others.  This

18  is not an allegation that Adams disregarded an excessive risk to inmate health or safety.  Instead, it

19  is an allegation that he disregarded others' unidentified and unspecified efforts.  The SAC does

20  not contain any supporting factual allegations.  As indicated, assertions that Adams had

21  knowledge of Plaintiff's condition or that certain issues were brought to his attention are not

22  sufficient because Plaintiff does not also allege that Adams denied, delayed or intentionally

23  interfered with medical treatment or that Adams failed to act to remedy any alleged deprivations

24  while they were occurring. Similarly, Plaintiff's allegations related to visitors and visitation do not

25  state an Eighth Amendment claim for inadequate medical care.

26     As to promulgation of a policy, the Court previously determined that Plaintiff's allegations

27  that Adams was responsible for promoting and implementing the policies "whereby the conditions

28  of confinement and the delivery of medical care to disabled inmates such as plaintiff violated the

1  Eighth Amendment to the United States Constitution," did not state a claim.  Complaint, at 2-3;

2  FAC, at 2; SAC, at 2; Doc. 16.

3         For the above reasons, the SAC fails to provide the required link between Defendant

4  Adams and the alleged constitutional violations.  Accordingly, the Court recommends that

5  Defendants' motion to dismiss be GRANTED on this issue.  If, as here, the Court determines that

6  a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies

7  of the complaint can be cured by amendment.  However, Plaintiff has been given prior

8  opportunities to amend his complaint to cure the deficiencies as to Defendant Adams and has been

9  provided the relevant legal standards.  Despite these opportunities, Plaintiff has been unable to

10  cure the deficiencies.  Therefore, the Court recommends that the action against Defendant Adams

11  be DISMISSED WITHOUT LEAVE TO AMEND.

12         2.      Defendant Kyle

13         Defendants argue that Plaintiff cannot state a claim against Kyle for supervisory liability

14  because the allegations of personal involvement are too vague and conclusory.  Unlike allegations

15  against Defendant Adams, however, Plaintiff alleges that Dr. Kyle directly treated Plaintiff,

16  including forcefully administering antipsychotic medication without any medical purpose and

17  which exacerbated Plaintiff's diabetes and hepatic disease.  SAC, at 3.  Plaintiff contends that

18  after April 2004, he was forced antipsychotic medication, but not given insulin.  SAC, at 6.

19  Plaintiff further alleges that "under defendant Kyle's direction," he was not provided a wheelchair

20  or medical attention for life-threatening conditions.  SAC, at 3.  Plaintiff also contends that

21  Defendant Kyle failed to address his medical disabilities at CSATF during the first half of 2005.

22  SAC, at 7.

23         To rebut the allegation that Dr. Kyle personally ordered antipsychotic medication in April

24  2004 without Plaintiff's informed consent, Defendants rely on evidence outside of the SAC.

25  Specifically, Defendants cite medical records to show that the medical orders for involuntary

26  medication in 2004 and 2005 referenced in the complaint were not completed by Dr. Kyle and Dr.

27  Kyle did not diagnose Plaintiff's mental illness.  Exh. F (Plaintiff's medical records).

28

1   Defendants additionally point out that Kyle was at CSATF at the time when Plaintiff

2   alleges that he was denied a wheelchair, medical care, etc. in the SHU at CSP.  To the extent that

3   Plaintiff alleges that Kyle concealed the involuntary medication from the probate court in 2004

4   and in 2005, Defendants rely on the independent court psychiatrists review of Plaintiff's medical

5   records and the probate court's prior findings that Plaintiff was competent to make his own

6   decisions.  Defendants also cite review of Plaintiff's treatment by the Plata Receiver.[1]  Exh. H.

7   Defendants also use Plaintiff's medical records and administrative Keyhea[2] proceedings to

8   show that he was involuntarily medicated under Keyhea in 2004, 2005 and 2006, and contend that

9   these procedures exceed the constitutional minimum.  Exhs. E-F.  Defendants report that Plaintiff

10  was involuntarily medicated for the time allowed under Keyhea, the involuntary medication was

11  stopped and prison officials then sought a competency determination.  Defendants cite a report by

12  a court-appointed psychiatrist who found that Plaintiff was competent.  Exh. B.

13  Finally, Defendants use outside evidence to show that Plaintiff took Dr. Kyle's comments

14  ("it would be an honor" to be the one to "kill" Plaintiff and that he is a "contemptible waste of

15  air") out of context.  Defendants cite documents produced at the deposition of Dr. Posner, taken in

16  Grangetto v. CDC, No. 06C0054, which purportedly show that the comments were not written by

17  Kyle, but were included in a summary written by Dr. Posner that he excerpted from a letter or e-

18  mail, allegedly written by Kyle, that Kyle destroyed.  Exh. G.

19  Plaintiff primarily objects to Defendants' arguments on the ground that Defendants'

20  motion is an improper speaking motion, with no notice pursuant to Rule 56, and it is

21  inappropriately supported by extrinsic evidence.  Plaintiff previously objected to Defendants'

22  exhibits on the grounds that (1) no notice of a Rule 56 motion was provided; (2) no discovery has

23  been conducted; (3) the offered evidence is not certified or complete; and (4) no request for

24  judicial notice has been made.

25

26  _____

    [1]Plata v. Schwarzenegger, N.D. Cal. Case no. CV 01-1351 (establishing a receivership to manage provision

27  of medical care to California inmates and appointing a receiver).

28  [2]Keyhea v. Rushen, 178 Cal.App.3d 526, 223 Cal. Rptr. 746 (1986) (setting forth the procedures for
    involuntary administration of antipsychotic medications).

1    Generally, a district court may not consider any material beyond the pleadings in ruling on

2    a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

3    However, there are two exceptions to the requirement that consideration of extrinsic evidence

4    converts a motion to dismiss to a summary judgment motion. Lee, 250 F.3d at 688. First,

5    judicially noticed facts may be considered on a motion to dismiss. Mullis v. United States

6    Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). Federal Rule of Evidence 201 allows for

7    judicial notice to be taken of facts that are "not subject to reasonable dispute" because they are

8    "capable of accurate and ready determination by resort to sources whose accuracy cannot

9    reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of "matters of

10   public record," MGIC Idem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir.1986), but may not

11   take judicial notice of disputed facts stated in such record. Lee, 250 F.3d at 690 (noting that a

12   court may take judicial notice of another court's opinion not for the truth of the facts recited

13   therein, but for the existence of the opinion).

14   Second, a court may consider material which is properly submitted as part of the

15   complaint. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by

16   Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). "If the documents are not

17   physically attached to the complaint, they may be considered if the documents' authenticity ... is

18   not contested and the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688

19   (internal quotations and citations omitted).

20   The Court declines to consider evidence outside the SAC in this instance. Defendants

21   have failed to identify for the Court which of their asserted facts they consider (1) judicially

22   noticeable or (2) matters of public record. As to the documents on which Plaintiff's SAC relies,

23   there is no indication that the exhibits submitted by Defendants are the particular documents relied

24   on by Plaintiff in his complaint as none are specifically identified with the exception of an e-mail.

25   However, Plaintiff challenges Defendants' contentions regarding e-mail attributed to Dr. Kyle. A

26   there is a factual dispute, the Court declines to treat Defendants' motion as one for summary

27   judgment. If Defendants wish to seek summary judgment, they must do so in compliance with the

28

1   Local Rules and the Federal Rules of Civil Procedure.  Accordingly, the Court will not consider

2   extrinsic evidence submitted by Defendants in the context of the instant motion to dismiss.

3          Further, the Court rejects Defendants' argument that the SAC does not contain any facts

4   that give rise to a cognizable claim for relief against Defendant Kyle under the Eighth

5   Amendment.  Plaintiff has asserted Defendant Kyle directly treated Plaintiff, forcefully

6   administering antipsychotic medication, which exacerbated Plaintiff's diabetes and hepatic

7   disease.  McGuckin, 974 F.2d at 1059 (deliberate indifference may be manifested "when prison

8   officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which

9   prison physicians provide medical care.").  The Court also declines to find, at the pleading stage,

10  that Plaintiff has not sufficiently alleged that Defendant Kyle knew of and disregarded a risk to

11  Plaintiff's health and/or safety where Plaintiff alleges that Defendant Kyle acted with specific

12  animus against Plaintiff.  Therefore, the Court recommends that defendants' motion to dismiss

13  plaintiff's Eighth Amendment claim against Defendant Kyle be DENIED.

14  C.     Preclusion and Rooker-Feldman

15         Defendants argue that the rules of comity require the federal court to give prior state

16  judgments the same preclusive effect as the state court that rendered the decision.  Defendants

17  therefore contend that Plaintiff is precluded from contesting the 2004 and 2007 state court

18  decisions regarding his competency to make his own health care decisions.

19         Under Rooker-Feldman, a federal district court lacks jurisdiction to exercise appellate

20  review over final state court judgments.  Henrichs v. Valley View Dev., 474 F.3d 609, 613-14

21  (9th Cir. 2007) (doctrine applies when the federal plaintiff's claim arises from the state court

22  judgment; preclusion, not Rooker-Feldman, applies when a federal plaintiff complains of an

23  injury that was not caused by the state court, but which the state court failed to rectify).

24  Defendants assert that state courts found Plaintiff competent to make decisions regarding his

25  medical care in December 2004 (Exh. A- Court Order in In re Grangetto, No. 04P0101) and in

26  November 2007 (Exh. B - Report of Forensic Psychiatrist in In re Grangetto, No. 07P0010).

27         At the pleading stage, Plaintiff's claim does not appear to arise from any state court

28  judgment or to directly challenge a state court competency determination.  Accordingly, the Court

1  recommends that Defendants' motion to dismiss based on preclusion or <u>Rooker-Feldman</u> be

2  DENIED WITHOUT PREJUDICE.

3  D.      <u>Conspiracy Claim</u>

4          Insofar as Plaintiff alleges that Adams and Kyle conspired to violate his Eighth

5  Amendment rights, Defendants contend that this allegation should be dismissed because a bare

6  assertion of a conspiracy, without more, is insufficient to state a claim.

7          Plaintiff has not alleged a separate conspiracy cause of action.  Plaintiff merely alleges

8  nothing that defendants were "co-conspirators," which is insufficient to state a claim.  <u>See</u>, <u>e.g.</u>,

9  <u>Simmons v. Sacramento County Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003) (holding

10 that conclusory allegations are insufficient to state a claim of conspiracy).  Accordingly, to the

11 extent Plaintiff intends to allege a conspiracy claim, the Court recommends that Defendants'

12 motion to dismiss be GRANTED on this issue.

13 E.      <u>Doe Defendants</u>

14         Finally, Defendants request dismissal of the doe defendants, who are alleged to be "in

15 some manner legally responsible" for the torts alleged because (1) a party cannot sue a doe in

16 section 1983 actions; and (2) he does not allege any specific misconduct against any doe.

17         Although the use of Doe defendants is generally disfavored, "'the plaintiff should be given

18 an opportunity through discovery to identify the unknown defendants, unless it is clear that

19 discovery would not uncover the identities . . . .'"  Wakefield v. Thompson, 177 F.3d 1160, 1163

20 (9th Cir. 1999) (quoting <u>Gillespie v. Civiletti</u>, 629 E.2d 637, 642 (9th Cir. 1980)).  In this case,

21 there is no indication that discovery would not uncover the identities of any unknown defendants.

22 Accordingly, the Court recommends that Defendants' motion to dismiss be DENIED WITHOUT

23 PREJUDICE on this issue.

24                            **CONCLUSION AND RECOMMENDATION**

25         For the reasons discussed above, the Court recommends that Defendants' motion to

26 dismiss be GRANTED IN PART AND DENIED IN PART as follows:

27

28

1.     Plaintiff's allegations regarding denial of parole and loss of good time credits be STRICKEN from the SAC and Defendants' motion to dismiss related to these allegations be GRANTED;

2.     Defendants' motion to dismiss be GRANTED as to Defendant Adams WITHOUT LEAVE TO AMEND the complaint;

3.     Defendants' motion to dismiss be DENIED as to Defendant Kyle.

4.     Defendants' motion to dismiss based on preclusion or Rooker-Feldman be DENIED WITHOUT PREJUDICE;

5.     Defendants' motion to dismiss Plaintiff's conspiracy claim be GRANTED;

6.     Defendants' motion to dismiss DOE defendants be DENIED WITHOUT PREJUDICE.

These Findings and Recommendation are submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    **Dated:**   **June 23, 2009**           **/s/ Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE